NELSON, J.,
delivered the opinion of the Court.
The transcript of record in this case, does not show when the bill was filed. The fiat for an injunction, seems to bear the date, 20th July, 1866. The prosecution and injunction bond seem to bear date, 27th January, 1866, and the injunction appears to have issued on the same day, and to have been made known to two of the defendants, on the first of February, 1866, and to the other on the 26th of the same month. It may therefore, be inferred that there is a clerical error in the Judge’s fiat, and that the bill was filed on or about the 27th January, 1866. Complainant charges, that on or *696 about the 25th November, 1847, he, as guardian of Jas. T. Carter, together with Robert Love, as his security, executed a note to Joseph "Wolfe; that the said James T. Carter obtained his majority in the latter part of the year 1850, about which time, complainant made a settlement as guardian, with “the court,” and delivered to said Carter, the custody of his entire property; that from that period until said Carter’s death, in July, 1859, the said Wolfe lived within a few miles of him, and could, at any time, have collected his debt, as the said James T. Carter had ample means out of which the debt could have been made; that after his death, his administrators filed a bill, alleging the insolvency of his estate, and enjoining the creditors; that complainant was in no way responsible for the debt, except als guardian, and that in violation of the injunction, the said .Wolfe had brought suit upon the note, on the 20th January, 1866, against Robert Love, the security, before a Justice.
Among other things, the prayer of the bill was, that Wolfe, Love, and the Sheriff in whose hands the note had been placed for collection, should be made defendants, and that Wolfe and the Sheriff should be enjoined from prosecuting the suit and collecting the debt; and that on final hearing, the said Wolfe should be required to look to the estate of James T. Carter, and be perpetually enjoined from collecting the same out of complainant, or Love, his surety.
In the bill, as well as in the answer of Love, it is strenuously insisted that the debt was, in reality, the debt of James T. Carter; that it could have been collected from him by due diligence, and that the presump *697 tion of payment arose from the lapse of more than sixteen years after the maturity of the note, and before the commencement of the suit against Love.
Wolfe, in his answer, states, that the note was executed by D. W. Carter, as guardian of James T. Carter, and due on the 22nd of November, 1847, for $150, of which amount the sum of $50 is credited, 25th of November, 1847; and that on the 3rd of February, 1866, he recovered judgment before the Justice against Robert Love, the security, for $209.30 and costs. He denies that the note was ever paid, and says that on the 27th of July, 1860, “it was taken out of his hands by the Sheriff, and filed in the Chancery Court at Elizabethton,” in the suit brought by James T. Carter’s administrator, for the purpose of having the estate administered as an insolvent estate, and that the note remained there until the January Term, 1866, when respondent, by leave of the Court, withdrew the note, and brought his suit in Washington county, against Love, his co-defendant. Wolfe states that he had no knowledge of complainant’s settlement as guardian; that he frequently applied to James T. Carter, in his lifetime, and to his administrator, after his death, for payment, but was unable to obtain it, and that he is not, and never has been, a very close collector.
No copy.of the note, or of the proceedings before the Justice, is contained in the record. The case was set for hearing on bill and answers, without other evidence than certain admissions made by the parties upon the hearing; and the Chancellor, at the May Term, 1868/ pronounced *698 a decree in favor of complainant, from which Wolf prosecutes this appeal.
It was admitted, on the hearing, that Wolf was enjoined in the suit at Elizabethton, and filed and withdrew the note, as stated in his answer; and he, on his part, admitted that the debt in controversy could have been collected out of James T. Cartel’, at any time after he obtained his majority, in 1850, and before his death, in July, 1859.
The Chancellor adjudged, in his decree, that the presumption of payment arises, in this cause, in favor of complainant, and Love, his surety, and perpetually en. joined'the collection of the note from them; but directed that the note might be filed against the estate of James T. Cartel’, deceased.
Upon several grounds, we hold that the Chancellor’s decree is erroneous.
1. From complainant’s own showing, it is manifest that the debt was his own, and not the debt of his ward. The ward was a minor, 'and incapable, in law, of executing a valid note. It was signed by the guardian, and not by the ward. The addition of the word “guardian,” or- the words “guardian of James T. Carter,” to complainant’s signature, did not, as the law stood at the date of the contract, change its nature. Such words were merely descriptive of his person. In Erwin & Bass, v. Carroll, 1 Yer., 145, it was held that a bill, single, signed thus: “J. P., administrator of J. P., deceased,” was the personal debt of the administrator, and that his sureties, as such, were not bound for it to the *699 distributees. In 1 Pars, on Notes and Bills, 89, 90, it is stated, that if a guardian signs a note, affixing his office to his name, as “A. B., guardian,” he is nevertheless held personally, because he cannot bind, by such an instrument, the person or property of his ward; and it is still the promise of the signer. “ Undoubtedly, he may secure himself from personal liability by saying -that he promises to pay out of his ward’s estate, and that only, if that be sufficient,” but it is not insisted that any such stipulation was in this case, contained in the note.
2. It is alleged in the bill, that complainant made a settlement, as guardian, with the Court, and it is to be presumed, if the debt to Wolfe was lawfully contracted on account of his ward, that he was allowed, or might have been 'allowed, a sufficient amount in that settlement, to satisfy the liability. The bill contains no averment to the contrary.
*3. Neither the bill of complainant, nor the answer of Robert Love, contains any averment -that the note was, in fact, paid by them, or either of them, or by James T. Carter. It is alleged in the bill, that Wolf, the holder of the note, could, at any time, have collected the debt from said Carter, “previous to his death, if, in fact, he did not do so;” and that he has lost his remedy against complainant, “if, in fact, the note was not paid by James T. Carter in his life-time;” and it is erroneously contended, in Love’s answer, that the law presumes the debt was due from said Carter, and that “the contract between said Wolf and respondent was, that respondent would be security for said sum, only during the guardianship of the said D. W. Carter.” The *700 entire defense rests upon i lie unauthorized assumption, that James T. Carter was primarily liable for the debt; that he was able to pay it, and that, in consequence of this ability and the lapse of time, the presumption of payment arises.
4. Before the distinction between sealed and unsealed instruments was abolished by section 1804 of the Code, it was uniformly held in this State, that the word “note” signified an unsealed, instrument. The word “bond” meant an instrument under seal; and it was repeatedly held that, in absence of the payment of interest, or any proof of demand or acknowldgement, a bond would be presumed, after the lapse of .sixteen years, and under special circumstances in a shorter time, to have been paid.. See Blackburn v. Squibb, Peck, 60; Atkinson v. Dance, 9 Yerg., 424; Anderson v. Settle, 5 Sneed, 203; Thompson v. Thompson, 2 Head, 407; Husky v. Maples, 2 Cold., 27; McDaniel v. Goodall, lb., 395. In most of these cases, as well as in Greenl. Ev., § 39, it was either distinctly held or intimated, that the presumption is not absolute, so as to form a complete bar to the action, but may be “repelled by any evidence of the situation of the parties, or other circumstance, tending to satisfy the jury that the debt is still due.” See, also, 4 Petersdorff’s Common Law, 642, 643, m.
In all the pleadings in this case, the instrument sued upon is styled a note; and it is not stated whether it was a sealed or unsealed instrument. The legal presumption is, that it was an unsealed instrument; and the presumption of payment, arising from the lapse of time, and relating to sealed instruments, is not, perhaps, *701 technically applicable. If it were, we would feel strongly inclined to hold that the special circumstances of this case repel the presumption, as the complainant and Love, his surety, expressly admit the execution of the note, and do not insist that it was paid by either, but rest their objection to a recovery upon the fact that James T. Carter, who was able to pay the note, but was not legally liable, should be presumed, from the lapse of time, to have discharged a debt which he was not bound to pay. It may be observed, further, that the full period of sixteen years did not elapse before the commencement of the late civil war, and that perhaps the time excluded from computation by the amended Constitution, as to the statute of limitations, should, by analogy, be excluded, in ascertaining the presumption of payment.
5. It does not appear that the statute of limitation of six years was pleaded or relied upon by Love, the security in the suit at law, upon the note before the Justice, and we hold that, in order to be available, it should have been formally pleaded or relied Upon in this Court. In Maury v. Lewis, it was said that the answer does not rely upon the statute of limitations, and, therefore, the defendant can not now insist upon it. 10 Yer., 118. See, also, Story’s Eq. Pl., § 751; Mitf. Pl., 273 m.; Allen v. Word, 6 Hum., 284; Graham v. Nelson, 5 Hum., 605. The liability for the debt is- virtually admitted by complainant and his security, Love, if the presumption of payment by James P. Carter did not attach. Nothing is said in the bill in regard to the statute of limitations, except that in the prayer it is *702 asked that '‘Wolfe be required to look to the estate of the said James T. Carter for the payment of said claim, if it is not paid or barred.” The statute is not relied upon or pleaded in Love’s answer; and we hold in accordance with the opinion of Chancellor Kent, that presumptions of payment, founded on the lapse of time, are matters of evidence resulting from the facts of the case, and are not in many cases proprio jure, a matter of plea in bar. Giles v. Baremore, 5 J. C. R,., 550.
In the answer of Wolfe, which was sworn to, although the oath of defendants is waived in the bill, it is distinctly and explicitly denied that “said note was or ever has been paid by said guardian, or the said James T. Carter, or any one else;” “and it is said that respondent never has been a very close collector, and whenever he considered his means in safe hands he generally left it there until he was compelled to have it;- and, as payment, in fact, is not averred by either of the parties to the note, we hold, under the circumstances of this case, that the statement in the answer removes any presumption arising from the lapse of time.
Let the decree be reversed, and a decree be pronounced here for the balance due on the note, with interest and costs.